UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>  v.<br><br>OCTAVIO SALAZAR PALMA,<br><br>  Defendant. | CASE NO. 2:25-cr-00090-TL<br><br>ORDER ON MOTION TO<br>APPEAL RELEASE ORDER |

This matter is before the Court on the Government's Emergency Appeal of Release Order and Motion for Stay (Dkt. No. 53) appealing the June 3, 2025, order of United States Magistrate Judge Mary Alice Theiler (Dkt. No. 56).[1] Having conducted a *de novo* review and considered the Indictment (Dkt. No. 1), the audio recording of the June 13 revocation hearing (Dkt. No. 56), Octavio Salazar Palma's response (Dkt. No. 77), the Government's reply (Dkt. No. 79), and the

---

[1] On June 3, 2025, Magistrate Judge Theiler ordered Mr. Salazar Palma's release pending further proceedings but stayed the release order until 4:00 p.m. on Wednesday, June 4, 2025, at the Government's request. Dkt. No. 53 at 1. The Government filed its emergency motion on June 4, 2025 (Dkt. No. 53), and the Court granted the motion to stay and set a briefing schedule for the appeal (Dkt. No. 59).

ORDER ON MOTION TO - 1

relevant record, the Court DENIES the Government's appeal.

## I. BACKGROUND

On May 14, 2025, a grand jury indicted Mr. Salazar Palma on one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846; and two counts of Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 18 U.S.C. § 2. Dkt. No. 1. The charges concern an alleged conspiracy to distribute controlled substances throughout the encampments and high drug areas in the International District of Seattle, including the "Jungle," a large greenbelt that extends for several miles from South Seattle into the International District. Dkt. No. 53 at 2.

Mr. Salazar Palma was arrested on May 29, 2025, he appeared for his arraignment on that same day, and a detention hearing was set for June 3, 2025. Dkt. No. 21. Pretrial Services initially recommended detention in its May 29, 2025, report. Dkt. No. 20. However, after conducting a further investigation, Pretrial Services filed a First Supplemental Pretrial Services Report recommending Mr. Salazar Palma be released on personal recognizance with specified special conditions that, *inter alia*, his travel be restricted to the Western District of Washington, he surrender all current and expired passports to the Court, he maintain residence as directed, and he maintain employment or actively seek employment if unemployed. Dkt. No. 52 at 5. The Government filed a motion seeking Mr. Salazar Palma's detention. Dkt. No. 37. Magistrate Judge Mary Alice Theiler conducted a detention hearing and ordered that Mr. Salazar Palma be released with the imposition of two additional special conditions: location monitoring and a prohibition on any contact with any existing or future co-defendants. Dkt. Nos. 56, 57.

The Government appeals the release order and seeks Mr. Salazar Palma's detention pending trial. Dkt. No. 53. Mr. Salazar Palma opposes the request. Dkt. No. 77.

APPEAL RELEASE ORDER - 2

## II. LEGAL STANDARD

### A. Standard of Review

If a person is ordered released by a magistrate judge, the government "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145(a)(1). A district court reviews the release order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

### B. Detention Standard

The Bail Reform Act ("the Act") requires that a court release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination that such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). This default requirement is in accord with the principle that "[i]n our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Ninth Circuit cautions that "[o]nly in rare cases should release be denied . . . ." *United States v. Santos–Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)). Further, "doubts regarding the propriety of release are to be resolved in favor of the defendant." *Id.* If a court determines that release will not reasonably assure the defendant's appearance and the safety of the community, the court must impose "the least restrictive further condition, or combination of conditions," that will reasonably assure these goals. 18 U.S.C. § 3142(c)(1)(B). The Act only requires detention where a court finds that *no* such condition or combination or conditions can accomplish these ends. 18 U.S.C. § 3142(e)(1).

If the government moves for detention pursuant to 18 U.S.C. § 3142(f) and a defendant is eligible for a detention hearing, then the court must determine whether there are conditions of

release that reasonably assure two goals: "the appearance of the defendant as required" and "the safety of any other person and the community." 18 U.S.C. § 3142(g). In making this determination, a court considers the following factors: (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*.

To obtain pretrial detention, "the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

**C.    Presumption of Detention**

Where a court finds probable cause that a defendant has committed certain types of offenses, including "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 21 U.S.C. § 801 *et seq.*, there is a presumption of detention. 18 U.S.C. § 3142(e)(3)(A). Although the Ninth Circuit has not ruled on the issue, almost every Circuit has held that an indictment is sufficient to trigger the presumption. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010), *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (collecting cases); *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985); *cf. Kaley v. United States*, 571 U.S. 320, 328 (2014) (holding that a proper indictment "conclusively determines the

existence of probable cause" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975))). Courts in this district have reached the same conclusion. *See, e.g.*, *United States v. Kuyateh*, No. C24-186, 2025 WL 241112, at *2 (W.D. Wash. Jan. 17, 2025) (citing United States v. Valenzuela, No. C12-062, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012)); *United States v. Wilson*, No. C24-93, 2024 WL 3950434, at *4 (W.D. Wash. Aug. 27, 2024) (citing *Kaley*, 571 U.S. at 329 n.6). Mr. Salazar Palma concedes that he has been charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act. Dkt. No. 77 at 5. He also concedes that the presumption of detention is triggered here. *Id.*

However, the presumption is subject to rebuttal by a defendant. 18 U.S.C. § 3142(e)(3). In addition, while the presumption shifts the burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Finally, when a defendant rebuts the presumption, "the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

### III. DISCUSSION

To make its determination, the Court first evaluates the presumption of detention contained in 18 U.S.C. § 3142(e)(3)(A) and then considers the factors enumerated in 18 U.S.C. § 3142(g).

**A.     Rebuttal of the Presumption of Detention**

**1.     Risk of Flight**

In arguing that Mr. Salazar Palma is a risk of flight, the Government points to Mr. Salazar Palma's "ties to Mexico, including citizenship, his history of travel there, the inconsistent information provided by his brother, and his access to capital to fund his flight. Dkt. No. 53 at 18–19.

APPEAL RELEASE ORDER - 5

Mr. Salazar Palma, a United States citizen, has dual citizenship in Mexico through his father, who is now deceased. Dkt. No. 77 at 6. Relying on this fact alone would justify detention merely on the basis of citizenship, which this Court cannot condone. Further, the Ninth Circuit has held that the fact that a defendant may be from a different country "does not tip the balance either for or against detention" or point conclusively to a determination that a defendant poses a serious risk of flight. *Motamedi*, 767 F.2d at 1408. Instead, a court considers how long a defendant has lived in the United States along with whether the individual has worked here, owns any property here, and has any relatives who are U.S. residents or citizens. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). As the Government concedes, Mr. Salazar Palma is a long-term resident of this District whose family also reside here. Dkt. No. 53 at 17, 18. Indeed, he was born in Washington and has been a life-long resident of the state. Dkt. No. 52 at 2. Mr. Salazar Palma's wife, three children, sister, and mother all live together in King County, and his brother also resides in this District. Dkt. No. 77 at 6, 8; Dkt. No. 52 at 2. While Mr. Salazar Palma was unemployed at the time of his arrest, he has a work history spanning back approximately ten years in the restaurant industry in the District. *Id.* These facts demonstrate extensive ties to both Washington State and the United States.

The Government also raises that Mr. Salazar Palma's brother was not aware of Mr. Salazar Palma's recent trips to Mexico. Dkt. No. 53 at 18. However, Mr. Salazar Palma himself was forthright with Pretrial Services in reporting that he had traveled to Mexico approximately six times in 2024 for personal reasons and last visited in February 2025. Dkt. No. 52 at 2. Even with the knowledge of his recent travel to Mexico, the United States Pretrial Services Office still recommended release. *Id.* at 5. Further, Mr. Salazar Palma agreed to surrender all current and expired passports and travel documents to the Court as a special condition of release. Dkt. No. 157 at 1.

Finally, the Government states that while Mr. Salazar Palma was unemployed at the time of his arrest, more than $20,000 in United States currency was found in his residence. Dkt. No. 53 at 18. Mr. Salazar Palma points out that the currency was located in five different rooms of the residence, which suggests the money belonged to multiple people in the home. Dkt. No. 77 at 8. However, some of the currency was found in bulk and wrapped in bands, with one bundle totaling $9,620. Dkt. No. 79 at 4. Though this fact gives the Court pause, the Government has not offered any evidence that Mr. Salazar Palma has continued access to substantial additional resources, especially now knowing he will be monitored if released and most of his alleged associates have also been arrested.

On balance, the Court finds that Mr. Salazar Palma's strong family ties to this District, his honesty about his recent travel to Mexico, his willingness to surrender his travel papers, and his limited criminal history without any indication of court appearance issues (Dkt. No. 52 at 3-4) are sufficient for Mr. Salazar Palma to meet his burden of production to rebut the presumption as to his risk of flight.

### 2. Danger to the Community

The Government's briefing argues that Mr. Salazar Palma is a danger to the community, relying on the nature as well as seriousness of the offense, the fact that Mr. Salazar Palma's co-defendants were caught with a number of firearms, and his alleged encouragement that his alleged confederates continue trafficking, even after they had been arrested. Dkt. No. 53 at 19, Dkt. No. 79 at 5. Of course, drug trafficking is a serious crime and endangers the community. But, to detain a person merely based on the accusation of such a crime would be to ignore the nature of the *rebuttable* presumption specifically created by Congress. As to the issue of the seized firearms, Mr. Salazar Palma correctly notes that there are no allegations that he himself possessed any firearms, and indeed the Government concedes that he did not. Dkt. No. 77 at 8.

APPEAL RELEASE ORDER - 7

Further, there were no firearms located at the property in Renton that he appeared to access. Dkt. No. 53 at 12. Additionally, there are no allegations that firearms were used in the alleged crimes, that Mr. Salazar Palma ever referenced any firearms during any of the taped conversations, or that he is a prohibited person who may not legally possess a firearm. *See also infra* Section III.B.4. The Court finds these facts sufficient for Mr. Salazar Palma to meet his burden of production to rebut the presumption that he poses a danger to the community.

While the Court finds Mr. Salazar Palma has presented sufficient evidence to rebut the presumption of detention, the presumption remains as an evidentiary finding in favor of detention. *Hir*, 517 F.3d at 1086. Therefore, the Court now turns to the evidence relevant to the factors listed in § 3142(g) and will weigh the presumption along with the factors.

**B.     The § 3142(g) Factors**

    **1.     Nature and Seriousness of the Offense Charged**

As detailed above, Mr. Salazar Palma is charged with an offense that "involves . . . a controlled substance" and carries a minimum of 10 years imprisonment. 18 U.S.C. 3142(g)(1); Dkt. No. 1 at 1–2. The Government alleges that Mr. Salazar Palma conspired with several co-defendants to distribute significant amounts of these controlled substances and that he was a high-level supplier to several redistributors. Dkt. No. 53 at 3. Further, while Mr. Salazar Palma was not arrested with any weapons and none were found in his home, his co-defendants had multiple firearms, including an AR-style rifle. *Id.* at 12–13.

Therefore, the Court finds that the nature and seriousness of the offense charged weighs in favor of detention.

    **2.     Weight of the Evidence**

The Government devotes twelve pages of its twenty-page appeal to the details of the drug trafficking investigation that led to Mr. Salazar Palma's arrest. Dkt. No. 53 at 2–13. The

Government provides transcripts of intercepted calls as well as photos of items recovered in a search of Mr. Salazar Palma's residence and in the arrest of his co-defendants. *Id.* at 3–13; Dkt. No. 55 (sealed). But despite all the evidence the Government has and may ultimately bring to bear in this case, Mr. Salazar Palma is still presumed innocent before trial, and nothing in the Court's analysis may be construed as modifying or limiting that presumption. 18 U.S.C. § 3142(j). Further, the Ninth Circuit has repeatedly declared that the weight of the evidence is the least important factor, and the statute neither requires nor permits a pretrial determination of guilt. *Gebro*, 948 F.2d at 1121; *see also Hir*, 517 F.3d at 1090; *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

Therefore, while the Court finds that the weight of evidence weighs in favor of detention, it treats this factor as the least important.

### 3. The History and Characteristics of Mr. Salazar Palma

Both the Government's motion and its reply focus on the presumption factors. *See generally* Dkt. Nos. 53, 79. To the extent the risk of flight factor overlaps with the 18 U.S.C. § 3142(g) factors, the Court has already explained why Mr. Salazar Palma overcomes the presumption of detention even accounting for those facts. *See supra* Section III.A.1. In addition, the statute requires only "reasonable assurance," and not a "guarantee" of a defendant's appearance. *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985); *see also United States v. Djoko*, No. CR19-0146, 2019 WL 4849537, at *5 (W.D. Wash. Oct. 1, 2019) (holding that conditions of release cannot guarantee defendant's appearance, but the standard under § 3142(g) is reasonable assurance); *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees.").

Further, Mr. Salazar Palma has a very limited and dated criminal history. Dkt. No. 52 at 3–4. Both the nature and age of those incidents mitigate the Court's concerns.

1   "Detention determinations must be made individually and, in the final analysis, must be
2   based on the evidence before the court regarding the particular defendant." *See United States v.*
3   *Tortora*, 922 F.2d 880, 888 (1st Cir. 1990); *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C.
4   Cir. 2021) (*citing Tortora*, 922 F.2d at 888). This approach is faithful to the text of the Act,
5   which requires the Court to consider "the history and characteristics of *the person*," a reference
6   to evidence regarding only the particular defendant under consideration, not generalities. 18
7   U.S.C. § 3142(g)(3) (emphasis added). The evidence that the Court has at this time is that Mr.
8   Salazar Palma has mostly led a law-abiding life before this arrest.

9   Therefore, the Court finds that Mr. Salazar Palma's history and characteristics weigh in
10  favor of release.

11  **4.     Danger to Any Person or the Community**

12  The Government's argument that Mr. Salazar Palma is a danger is based only on the facts
13  of their investigation, including his alleged involvement in the drug distribution activity, the
14  seizure of firearms from co-defendants, and his alleged encouragement that his confederates
15  should continue trafficking, even after they had been arrested. Dkt. No. 53 at 19–20, Dkt. No. 79
16  at 5. But the relevant inquiry is whether the Government can prove by clear and convincing
17  evidence that Mr. Salazar Palma poses a *future* harm of danger to the community. *See Salerno*,
18  481 U.S. at 751 ("Under the Bail Reform Act, . . . a judicial officer evaluates the likelihood of
19  future dangerousness . . . ."). Here, the Government does not allege that Mr. Salazar Palma was
20  observed using or threatening violence against any other person during their investigation, and
21  no firearms were found on Mr. Salazar Palma at the time of his arrest or in either his home or the
22  property in Renton that he appeared to access. Dkt. No. 53 at 12, 13. Nor does the Government
23  address why either any of the special conditions recommended by Pretrial Services or the two
24  additional special conditions imposed by Judge Theiler—i.e., location monitoring and no contact

with any co-defendants—are insufficient to address this factor (or, for that matter, the appearance factor). *See also supra* Section III.A.2.

Therefore, the Court finds that a consideration of danger to any person or the community weighs in favor of release.

## IV.    CONCLUSION

For the reasons explained above, the Court finds that the Government has not met its burden to prove by a preponderance of the evidence that there is no combination of conditions of release that will reasonably assure Mr. Salazar Palma's appearance. While the nature of the offense when combined with the weight of the evidence raises serious concerns, the weight of the evidence is the least important factor. *Gebro*, 948 F.2d at 1121. Therefore, the Court also finds that the Government has not met its burden to prove by clear and convincing evidence that there is no combination of conditions of release that will reasonably assure the safety of any other person and the community.

Accordingly, the Government's appeal of Judge Theiler's release order is DENIED. The Court concludes that the conditions recommended by Pretrial Services, along with the additional conditions proposed by Judge Theiler, will reasonably assure Mr. Salazar Palma's appearance and the community's safety. *See* Dkt. No. 57. Counsel for Mr. Salazar Palma SHALL coordinate with Pretrial Services to arrange his release under the conditions of the appearance bond he has executed. *See id.* Defendant SHALL NOT be released without location monitoring.

Dated this 20th day of June, 2025.

Tana Lin
United States District Judge